**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

ROSETTA BEATRICE DAVIS,
Appellant,

v.

DEPARTMENT OF AGRICULTURE,
Agency.

DOCKET NUMBER
DC-0752-21-0127-I-1

DATE: September 1, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

James L. Fuchs, Esquire, Baltimore, Maryland, for the appellant.

Shirley Pointer, Albuquerque, New Mexico, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

## FINAL ORDER

¶1 The agency has filed a petition for review of the initial decision, which reversed the agency removal action. For the reasons discussed below, we GRANT the agency's petition for review. We AFFIRM the initial decision's findings that the appellant failed to prove her affirmative defenses and MODIFY the administrative judge's analysis of the affirmative defenses to address

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

subsequent case law. We REVERSE the initial decision as to the removal action and SUSTAIN the appellant's removal for medical inability to perform her job duties.

**BACKGROUND**

¶2 At the time of her removal, the appellant was employed as a GS-12 Program and Management Analyst in the agency's Farm Production and Conservation (FPAC) Business Center.[2] Initial Appeal File (IAF), Tab 1 at 13. Beginning in April 2018 and continuing through the effective date of her removal on November 22, 2019, the appellant failed to regularly report to duty. IAF, Tab 11 at 53-58. During that period, the appellant submitted notes from her treating physicians identifying her medical conditions and treatment. *Id.* at 61-76. Specifically, in a letter dated May 17, 2018, a doctor requested that the appellant be excused from work through May 20, 2018. *Id.* at 61. In a letter dated May 22, 2018, a medical note indicated that she had a medical evaluation that day. *Id.* at 62. By a letter dated June 14, 2018, she was treated by her psychiatrist for anxiety and panic disorder due to a "severe anxiety attack as a result of on-going harassment by management," and was identified as "totally incapacitated" and excused from work through July 14, 2018. *Id.* at 64-65. In a letter dated July 12, 2018, her physician noted that she was undergoing treatment and additional testing for a concussion she sustained on May 16, 2018, and that she was "on full disability until further notice." *Id.* at 69.

¶3 On August 7, 2018, the appellant requested that her leave be designated as protected under the Family and Medical Leave Act of 1993 (FMLA), citing the July 14, 2018 letter. *Id.* at 78. Although the record is unclear, it appears that the

[2] As the administrative judge observed, at some point during the events at issue in this appeal the agency underwent a reorganization and the appellant's position was realigned from a GS-12 Program Specialist in the Farm Service Agency (FSA) to a GS-12 Program and Management Analyst in FPAC Business Center, Office of the Chief Operating Officer, Homeland Security Division. IAF, Tab 31, Initial Decision (ID) at 15-16; *compare* IAF, Tab 1 at 13, *with* IAF, Tab 11 at 28-38.

appellant's request was granted and she was on FMLA-protected leave from August 7 through October 31, 2018. *See id.* at 18, 53. On October 23, 2018, while on FMLA, the appellant requested full-time telework to accommodate her conditions and indicated that she would provide medical documentation to support her request. *Id.* at 81. The appellant provided a letter dated October 24, 2018, from her psychiatrist stating that she was being treated for chronic anxiety disorder as result of harassment and retaliation while at work, and that she could return to work "providing the conditions of her work environment are free of harassment and hostility," as well as a letter from her physician dated October 25, 2018, stating that she was still undergoing treatment for a concussion, and that he could not provide a "confirmed date or type of recovery." *Id.* at 72, 74, 80. The agency subsequently engaged in the interactive process, and on December 4, 2018, offered the appellant an accommodation of 1 telework day per week, concluding that granting the appellant's requested accommodation of full-time telework would require removal of the essential functions of her position. *Id.* at 83-88, 98-100. On December 11, 2018, the appellant rejected the offered reasonable accommodation. *Id.* at 91. The appellant and the agency's reasonable accommodations coordinator continued to engage in the interactive process over the following 3 months, but the efforts ultimately proved fruitless. *See id.* at 114-75. Throughout this time, the appellant continued to utilize extensive leave. *Id.* at 53, 55, 57.

¶4 On May 3, 2019, the agency agreed to conduct a series of three job searches for a position within the appellant's medical restrictions to which she could be reassigned, which it identified as the accommodation of "last resort." *Id.* at 177-78, 192-202. After the third and final job search did not produce any vacant positions for which the appellant qualified, on October 1, 2019, the agency informed the appellant that it had fulfilled its legal obligations in its effort to accommodate her medical restrictions. IAF, Tab 22 at 150. By that time, the

appellant had accrued over 1,400 hours of leave without pay (LWOP). *See* IAF, Tab 11 at 54.

¶5 By a letter dated October 11, 2019, the agency proposed to remove the appellant from her position based on her inability to report for duty and perform the full scope of her job duties. *Id.* at 17-21. The agency did not specifically label the underlying charge in the proposal letter. *Id.* Nevertheless, the agency stated in the proposal that "[s]ince, on or about, April 23, 2018, you have been unable to report for duty on a full-time regular basis due to a medical condition." *Id.* at 17. The proposal also listed some of the essential job duties of the appellant's position and noted that they were required to be completed in person and could not be performed remotely. *Id.* The proposal further identified the medical documentation the appellant had provided, recounted the agency's efforts to accommodate her conditions, stated her absence had "no foreseeable end," and noted that others had taken on the additional burden of fulfilling her duties. *Id.* at 17-20. The proposal provided the appellant with the opportunity to respond orally or in writing. *Id.* at 20.

¶6 After the appellant failed to respond to the proposal orally or in writing, *see id.* at 23, on November 13, 2019, the deciding official issued a decision sustaining the appellant's removal from her position and from Federal service, *id.* at 23-26. The decision reiterated that the appellant was being removed from service "based on [her] inability to report to duty and to perform the full scope of duties of [her] officially assigned position," noting that the provided medical documentation indicated that she had been "unavailable for duty since April 23, 2018, for compelling reasons beyond [her] control," and that the submitted medical documentation stated that there was no foreseeable end in sight to her absences, and her condition "precludes [her] from performing the essential duties of [her] position on a full-time regular basis." *Id.* at 23. The decision also stated that removal promoted the efficiency of the service and that a lesser action would be inadequate. *Id.* at 23-24.

¶7 After exhausting the agency's equal employment opportunity (EEO) complaint process, the appellant timely filed the instant Board appeal. IAF, Tab 1, Tab 5 at 15. The appellant raised affirmative defenses of disability discrimination based on disparate treatment and a failure to accommodate theory, and reprisal for protected EEO activity. IAF, Tab 19 at 7-12, 17-24.

¶8 After the appellant withdrew her hearing request, IAF, Tab 6, the administrative judge issued an initial decision based on the written record, reversing the agency removal action, IAF, Tab 31, Initial Decision (ID) at 3, 19. Specifically, the administrative judge concluded that the charge that supported the appellant's removal was essentially an excessive absences charge, and that to prove the charge the agency had to establish, among other things, that it warned the appellant that adverse action could be taken unless she returned to duty. ID at 7 (citing *Schultz v. United States Navy*, 810 F.2d 1133, 1137 (Fed Cir. 1987)). Based on her review of the record, the administrative judge concluded that there was no evidence that the agency gave the appellant any such warning, and so the agency failed to meet its burden of proving the charge. ID at 8-10. Because the agency failed to meet its burden of proving the sole charge, she reversed the removal action. ID at 19. She also concluded that the appellant failed to prove any of her affirmative defenses. ID at 10-19.

¶9 The agency has filed a petition for review arguing that the administrative judge erroneously reframed the agency's medical inability charge as a charge of excessive absences. Petition for Review (PFR) File, Tab 1 at 10-14. Alternatively, it argues that it met its burden of proving the excessive absences charge. *Id.* at 14-17. The agency has also certified its compliance with the administrative judge's interim relief order. *Id.* at 17, 27-28. The appellant has responded to the petition for review. PFR File, Tab 3. The appellant has also filed a supplemental pleading alleging that the agency failed to comply with the administrative judge's interim relief order. PFR File, Tab 4. Finally, the agency filed a response to the appellant's supplemental pleading reasserting that it has

complied with the administrative judge's interim relief order, and the appellant has replied to the agency's response. PFR File, Tabs 5-6.

## DISCUSSION OF ARGUMENTS ON REVIEW

The agency has complied with the administrative judge's interim relief order.

¶10 When, as here, the appellant is the prevailing party in an initial decision that grants interim relief, any petition or cross petition for review must be accompanied by a certification that the agency has complied with the interim relief order either by providing the required interim relief or by satisfying the requirements of 5 U.S.C. § 7701(b)(2)(A)(ii) and (B). In an appeal from an adverse action that was reversed, the agency's evidence must show, at a minimum, that it has appointed the appellant to a position carrying the appropriate title, grade, and rate of pay, effective the date of the initial decision. *Moore v. U.S. Postal Service*, 78 M.S.P.R. 80, 83 (1998). If an agency files a petition or cross petition for review and has not provided the interim relief ordered, the appellant may request dismissal of the agency's petition or cross petition. 5 C.F.R. § 1201.116(d). In such circumstances, the Board has discretion to dismiss the agency's petition pursuant to 5 C.F.R. § 1201.116(e).

¶11 In the initial decision, the administrative judge ordered the agency to provide interim relief to the appellant in accordance with 5 U.S.C. § 7701(b)(2)(A) in the event either party filed a petition for review. ID at 20. The appellant argues that the agency failed to comply with the administrative judge's interim relief order because it failed to provide her with access to certain agency equipment and systems and has refused to pay her back pay and retroactive benefits, among other things. PFR File, Tab 3 at 15-17, Tab 4 at 4-10, Tab 6 at 4-17. Consequently, she asks the Board to dismiss the agency's petition for review. PFR File, Tab 6 at 8-13.

¶12 However, the relief the appellant is requesting is full relief, not interim relief, which she is not entitled to until a final decision has been rendered in her

favor. *See Johnston v. Department of the Treasury*, 100 M.S.P.R. 78, ¶ 25 (2005) (noting that the purpose of interim relief is not to make the appellant whole at the interim relief stage of the proceedings, but rather, to provide the limited relief of 5 U.S.C. § 7701(b)(2)(A) during the pendency of the petition for review process); *Ginocchi v. Department of the Treasury*, 53 M.S.P.R. 62, 71 n.6 (1992) (same); *Hall v. Department of the Interior*, 90 M.S.P.R. 32, ¶ 9 (2001) (noting that an agency is not required to pay an award of back pay before a decision is final); 5 C.F.R. § 1201.116(f) (stating that compliance with interim relief orders does not require paying back pay for the period preceding the date of the initial decision). Here, the agency has certified and provided evidence that it has reinstated the appellant to her former position at her prior grade and pay level, effective July 16, 2021, the date of the initial decision. PFR File, Tab 1 at 17, 27-28; Tab 5 at 8-11. The appellant has not challenged the agency's certification of her reinstatement. Accordingly, we find that the agency has provided the interim relief required under 5 U.S.C. § 7701(b)(2)(A) and we deny the appellant's motion to dismiss the agency's petition for review.[3]

The administrative judge applied an incorrect legal standard to the agency's charge.

¶13 On review, the agency argues that the administrative judge erred by reframing the agency's non-disciplinary charge of "Inability to Report for Duty on Full-Time Basis Due to a Medical Condition," as a disciplinary-based charge

[3] To the extent the appellant is seeking to enforce the interim relief provisions of the initial decision, we deny her request. *See* PFR File, Tab 3 at 16 (requesting the Board to "expeditiously have the Agency enforce the [interim relief] Order, as written"). The Board's regulations do not allow for a petition for enforcement of an interim relief order while an appeal is pending Board review; such petitions apply only to final Board decisions. *Sanders v. Department of Homeland Security*, 122 M.S.P.R. 144, ¶ 8 n.5, *aff'd*, 625 F. App'x 549 (Fed. Cir. 2015), *and overruled on other grounds by Haas v. Department of Homeland Security*, 2022 MSPB 36; 5 C.F.R. § 1201.182(a)-(b). Upon our issuance of this final Board order, the appellant may file a petition for enforcement with the appropriate regional office if she still believes the agency has not provided full interim relief. 5 C.F.R. § 1201.116(g).

of "excessive absences." PFR File, Tab 1 at 4-5, 10-14. It argues that the removal proposal and decision letters clearly identified that the appellant's removal was based on her inability to work because of her medical condition, and so the administrative judge erred by reframing the agency's reason for removal as being due to the appellant's excessive absences. *Id.* at 10-12. The agency notes that, unlike an excessive absences charge, in order to prove a charge based on medical inability, it need only prove that a nexus exists between the appellant's medical conditions and the observed deficiencies in her performance or conduct, or a high possibility, given the nature of the work involved, that the appellant's condition may result in harm to herself or others, or more succinctly, that the appellant's medical condition prevented her from being able to safely and efficiently perform the core duties of her position. *Id.* at 12 (citing *Miller v. Department of the Army*, 121 M.S.P.R. 189, ¶ 11 (2014); *Clemens v. Department of the Army*, 120 M.S.P.R. 616, ¶ 5 (2014)). If the administrative judge had correctly analyzed the agency's charge under the standard for medical inability instead of the standard for excessive absences, the agency argues, she would have determined that the agency met its burden of proving the charge. *Id.* at 12-14.

¶14 An agency is not required to affix a label to a charge. *Otero v. U.S. Postal Service*, 73 M.S.P.R. 198, 202 (1997). Instead, it is simply required to state the reasons for a proposed adverse action in sufficient detail to allow the employee to make an informed reply. *Id.* Additionally, a charge must be viewed in light of the accompanying specifications and circumstances and should not be technically construed. *Id.*

¶15 As a general rule, an agency may not take an adverse action based on an employee's use of approved leave. *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 30 (2015), *overruled in part by Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 23-25. However, an exception may exist where the following criteria are met: (1) the employee was absent for compelling reasons beyond her control so that agency approval or disapproval of

leave was immaterial because she could not be on the job; (2) the absences continued beyond a reasonable time, and the agency warned the employee that an adverse action could be taken unless she became available for duty on a regular full-time or part-time basis; and (3) the agency showed that the position needed to be filled by an employee available for duty on a regular, full-time or part-time basis. *Savage*, 122 M.S.P.R. 612, ¶ 30; *Cook v. Department of the Army*, 18 M.S.P.R. 610, 611-12 (1984). This exception is applicable only under unusual circumstances, i.e., where the employee is unable to return to duty because of the continuing effects of illness or injury. *Cook*, 18 M.S.P.R. 610, 611-12.

¶16 Alternatively, an agency may remove an employee if she is unable, because of a medical condition, to perform the duties of her position. *Savage* 122 M.S.P.R. 612, ¶ 34. To establish a charge of "medical inability to perform" based on a current medical condition, an agency must prove a nexus between the employee's medical condition and observed deficiencies in her performance or conduct or a high probability, given the nature of the work involved, that her condition may result in injury to herself or others. *Fox v. Department of the Army*, 120 M.S.P.R. 529, ¶ 25 (2014); *see Haas v. Department of Homeland Security*, 2022 MSPB 36, ¶ 15 (recognizing this standard and comparing it with the differing standard that applies in the context of an employee's removal from a position with medical standards based solely on their medical history). The Board has otherwise described this standard as requiring that the agency establish that the appellant's medical condition prevents her from being able to safely and efficiently perform the core duties of her position. *Haas*, 2022 MSPB 36, ¶¶ 15, 20. In determining whether an agency has met this burden, the Board will consider whether a reasonable accommodation, short of reassignment, exists that would enable the appellant to safely and efficiently perform her core duties. *Id.*, ¶ 25.

¶17 In the initial decision, the administrative judge determined that the agency's unlabeled charge should be treated as a charge of excessive absences and

analyzed it under this standard. ID at 7-10. She ultimately concluded that the agency failed to meet its burden of proving the charge because it could not demonstrate that it warned the appellant that an adverse action could be taken unless she returned to duty. ID at 8-10 (citing *Schultz*, 810 F.2d at 1137).

¶18 Based on our review of the record, we conclude that the agency intended to charge the appellant with medical inability to perform. We acknowledge that the agency listed the dates she was absent and recited its conclusion as to why her situation met what appear to be elements of an excessive absences charge. IAF, Tab 11 at 17-20. For example, the agency alleged that she was "unavailable for duty for compelling reasons beyond her control," others were performing her work, and "it is imperative that [her] position be filled" by someone who could perform the essential duties. *Id.* at 19-20; *see Savage*, 122 M.S.P.R. 612, ¶ 30.

¶19 Nonetheless, we find that the administrative judge's interpretation of the proposal notice took an overly narrow view of the agency's allegations, and that the agency's unlabeled narrative charge was instead a charge of medical inability to perform. In a similar case, *Edwards v. Department of Transportation*, 109 M.S.P.R. 579, ¶¶ 13-14 (2008), *disagreed with on other grounds by* EEOC Petition No. 0320080101, 2009 WL 1904988 (June 23, 2009), *concurred in and adopted by* 112 M.S.P.R. 82 (2009), the Board disagreed with an administrative judge's interpretation of a charge labeled "unavailability for duty" as a charge of excessive absences. The Board concluded that the agency effectively charged the appellant with being medically unable to perform her duties because its focus was on her apparent inability to perform her regular duties. *Id.*, ¶ 14. To that end, the agency discussed the appellant's medical restrictions in the proposed notice of removal and removal decision, repeatedly requested medical documentation from the appellant concerning her ability to work, assessed that documentation, and twice refused to permit the appellant to work when she attempted to do so. *Id.* Put another way, the agency did not take its action based on the appellant's past absences, but rather due to her continuing inability to return to work. *See Savage*,

122 M.S.P.R. 612, ¶¶ 33-34 (interpreting a charge of unavailability for duty as a charge of medically inability to work on this basis).

¶20 As in *Edwards*, the proposal and decision letter here were focused on the fact that the appellant's medical restrictions prevented her from performing her duties. IAF, Tab 11 at 17-26. The proposal letter stated that, based on the medical documentation the appellant provided, she was "unable to complete the essential functions of [her] position" for medical reasons, recited the history and nature of her medical restrictions, detailed the agency's attempts to provide reasonable accommodation, and explained why her requested accommodation of teleworking was inconsistent with the in-person nature of her duties. IAF, Tab 11 at 17-20; *see Fox*, 120 M.S.P.R. 529, ¶¶ 11-13, 25-30 (finding that an agency proved its medical inability to perform charge when an employee's absences had a negative effect on her performance and the performance of her team); *Ellshoff v. Department of the Interior*, 76 M.S.P.R. 54, 68 (1997) (recognizing that a charge of inability to perform job duties is equivalent to a charge of medical incapacity); *cf. Thome v. Department of Homeland Security*, 122 M.S.P.R. 315, ¶¶ 17-22 (2015) (concluding that the agency misrepresented its charge as a non-disciplinary "unavailability for duty" charge when it actually removed the appellant for a disciplinary-based charge of refusal to return to full duty, where agency officials repeatedly testified that they removed her because she "refused" to return to full duty).

¶21 The decision letter similarly reiterates that the agency's action was based on the appellant being unavailable for duty for compelling medical-based reasons beyond her control, noting that it was evident from the documentation she submitted that her "medical condition precludes [her] from performing the essential duties of [her] position on a full-time regular basis," and that based on the medical documentation, there was no foreseeable end in sight to her absences. IAF, Tab 11 at 23. Further, the appellant did not provide a response to the proposal, so there is no evidence in the record indicating that she interpreted the

agency's charge as anything other than one based on her medical inability to perform her job duties. *See Thome*, 122 M.S.P.R. 315, ¶ 22 (examining an employee's reply to see whether she defended against a charge in determining whether she received adequate notice of the charge).

¶22 We also reject the appellant's argument that the agency waived its right to challenge the administrative judge's reframing of its medical inability charge as a charge of excessive absences because the agency failed to object to the reframing of the charge before the record closed below. PFR File, Tab 3 at 9; *see* IAF, Tab 15 at 2 (close of record summary identifying the agency's charge as "essentially an 'Excessive Absence' charge" and setting forth the applicable legal standard for such a charge). The order summarizing the close of record conference, in which the administrative judge identified the charge as one of excessive absences, did not include any notice to the parties that they could object to the contents of the order or how to do so. IAF, Tab 15. Following that order, the agency argued in its close-of-record submission that it had proven that the appellant was medically unable to perform her duties. IAF, Tab 20 at 8-11. The appellant had an opportunity to respond to this argument and, in the context of her claim of disability discrimination, disagreed with the agency's assertion that she was medically unable to work.[4] *E.g.*, IAF, Tab 25 at 5-6.

¶23 Further, the Board has, on previous occasions, reopened an appeal on its own motion when an administrative judge erroneously interpreted the agency's charge. *See Boltz v. Social Security Administration*, 111 M.S.P.R. 568, ¶ 11 (2009) (reopening an appeal on the Board's own motion to address an administrative judge's erroneous interpretation of the agency's charges, even though not raised by either party on review); *Valenzuela v. Department of the*

[4] Neither in her close-of-record submission nor in her response to the agency's close-of-record submission did the appellant directly contest the agency's charge, either as a charge of medical inability to perform or excessive absences. IAF, Tabs 19, 25. Instead, she argued that she had proven her affirmative defenses. IAF, Tab 19 at 4-12, Tab 25 at 4-13.

*Army*, 107 M.S.P.R. 549, ¶ 11 (2007) (same). Additionally, the Board is required to adjudicate an adverse action solely on the grounds invoked by the agency and may not substitute what it considers to be a more appropriate charge. *Gamboa v. Department of the Air Force*, 120 M.S.P.R. 594, ¶ 7 (2014). Because it is clear based on our review of the record that the administrative judge incorrectly reframed the agency's charge, we find it appropriate to reassess the charge as a charge of medical inability to perform, applying the correct applicable standard for such a charge.

¶24 In sum, we find that the agency's charge was one of medical inability to perform and the administrative judge erred in interpreting the charge otherwise. Accordingly, the correct applicable standard is as follows: whether the agency proved a nexus between the appellant's medical condition and observed deficiencies in her performance or conduct or a high probability, given the nature of the work involved, that her condition may result in injury to herself or others. *Fox*, 120 M.S.P.R. 529, ¶ 25; *Clemens*, 120 M.S.P.R. 616, ¶ 5. Stated more simply, the question is whether the appellant's medical condition prevented her from being able to safely and efficiently perform the core duties of her position. *Clemens*, 120 M.S.P.R. 616, ¶ 5; *Fox*, 120 M.S.P.R. 529, ¶ 24. In determining whether the agency has met this burden, we will consider whether a reasonable accommodation exists, short of reassignment, that would enable the appellant to safely and efficiently perform her core duties. *See Fox*, 120 M.S.P.R. 529, ¶ 26 (noting that the core duties of a position are synonymous with its essential functions, i.e., the fundamental job duties of the position, not including marginal functions); 29 C.F.R. § 1630.2(n)(1).

The agency proved its medical inability charge.

¶25 Although we conclude that the administrative judge erred by applying the incorrect standard to the agency's charge, because the record is fully developed and there was no hearing requiring demeanor-based credibility determinations, the Board can determine whether the agency met its burden of proving the correct

charge without a remand. *See Boltz*, 111 M.S.P.R. 568, ¶¶ 11-20 (2009) (concluding that the administrative judge incorrectly interpreted the agency's charge but declining to remand the appeal and instead re-analyzing the charge, while deferring to the administrative judge's demeanor-based credibility findings); *see also Haas*, 2022 MSPB 36, ¶ 20 (applying the proper standard to a medical inability to perform charge, rather than remanding the appeal, when the administrative judge applied an incorrect standard but the record was fully developed on the relevant issues).

¶26 By the appellant's own admission, at the time she was removed from her position she was absent and "unable to report" to duty in person without the accommodation of full-time telework, due to medical reasons. IAF, Tab 19 at 19. The medical evidence the appellant submitted showed that she was "totally incapacitated" and unable to work following a severe anxiety attack on or around June 14, 2018, and in a July 12, 2018 letter, her physician stated that she was on "full disability" until further notice based on a concussion she sustained on May 16, 2018. IAF, Tab 11 at 64-65, 69. On August 7, 2018, she began a period of FMLA-protected leave and ultimately exhausted all her paid leave and FMLA leave and accrued 1,440 hours of LWOP and negative leave balances while she and the agency engaged in the interactive process to accommodate her conditions. *Id.* at 53-58, 78. After the appellant rejected the agency's offered accommodation of part-time telework, *see id.* at 84-88, 90-92, 98-100, the agency continued to attempt to search for effective accommodations for her, *id.* at 114-218. As of March 27, 2019, the appellant's psychiatrist was still unable to unconditionally clear her to return to full duty. *Id.* at 76. The interactive process ultimately concluded on October 1, 2019, with the agency unsuccessfully attempting to accommodate the appellant through the accommodation of last resort, her requested reassignment. IAF, Tab 22 at 150; *see Angel v. Office of Personnel Management*, 122 M.S.P.R. 424, ¶ 9 (2015) (describing reassignment as the reasonable accommodation of last resort, which is required only after it has been

determined that there are no effective accommodations that would enable the employee to perform the essential functions of her current position or that all other reasonable accommodations would impose an undue hardship).

¶27 Based upon our review of the record, the appellant did not return to work or provide updated medical records before her removal in November 2019. *See, e.g.*, IAF, Tab 11 at 53-76. At the time the interactive process ended, the appellant's medical conditions had effectively kept her from working on a full-time regular basis for nearly a year and a half, and the agency had exhausted its obligations under the reasonable accommodation process. *See id.* at 17, 102. Under such circumstances, we find that the agency met its burden of proving that the appellant was medically unable to perform her job duties.

¶28 We also find no merit to the appellant's argument that the agency failed to adequately attempt to accommodate her because she could perform her job duties while on full-time telework despite the agency's determination otherwise, and because the agency initially sent an outdated version of her résumé as a part of the reassignment job search. IAF, Tab 19 at 8-11; Tab 25 at 7-10, 12. In considering the appellant's disability discrimination claim, the administrative judge conducted a thorough analysis of the parties' reasonable accommodation interactive process and concluded that the agency met its obligations, and we adopt her findings in this regard. ID at 10-14.

¶29 Among other things, the administrative judge determined that the agency established that it was unable to accommodate the appellant's request for full-time telework because some of her job functions required face-to-face coordination and the use of agency tools and equipment that could not be accessed remotely, which would have necessitated the agency to remove essential functions of her position. ID at 11-12; *see* IAF, Tab 11 at 177, 179-81, 220-23. The administrative judge also rejected the appellant's argument that the agency failed to conduct an adequate reassignment job search because it used an outdated résumé, noting that although the agency initially used the appellant's outdated

résumé for the first of its three job searches in error, it became aware of the error and completed the two subsequent searches using the correct, updated résumé, and still failed to find any positions to which the appellant could be reassigned. ID at 12-13; *see* IAF, Tab 11 at 192-202, 212-15; Tab 26 at 13-14.

¶30 In conclusion, we find that the agency met its burden of proving its charge. The agency proved that the appellant's medical condition prevented her from being able to safely and efficiently perform the core duties of her position, with or without accommodation.

The administrative judge properly determined that the appellant failed to prove her affirmative defenses.

¶31 The administrative judge found that the appellant failed to prove her claims that the agency failed to accommodate her disability, subjected her to status-based discrimination based on her disability, and retaliated against her for her protected EEO activity. ID at 8-17. The parties do not challenge these findings on review, and we discern no basis to disturb the administrative judge's conclusion. However, in light of developments in the case law after she issued her initial decision, we have modified her analysis.

*Disability discrimination claims*

¶32 The appellant alleged disability discrimination, but the administrative judge denied her claims. IAF, Tab 19 at 4-11. Neither party challenges the administrative judge's finding on review. Nonetheless, we modify those findings here in light of the Board's decision in *Haas*, 2022 MSPB 36. As clarified in *Haas*, both a claim of disability discrimination based on an individual's status as disabled and a claim based on an agency's failure to reasonably accommodate that disability require that the individual be "qualified." *Id.*, ¶ 28. A qualified individual with a disability is one who can "perform the essential functions of the . . . position that such individual holds or desires" with or without reasonable accommodation. 42 U.S.C. § 12111(8); *Haas*, 2022 MSPB 36, ¶ 28.

¶33 As noted above, the administrative judge determined that the appellant could not perform the essential functions of her position, with or without reasonable accommodation, and we decline to disturb this conclusion. ID at 9-10. At the time of her removal, the appellant could only work in her current position if allowed to telework full-time. IAF, Tab 11 at 76, 173-75. The administrative judge determined that the majority of the appellant's duties required the use of equipment and tools that could not be replicated at home and that her duties also necessitated face-to-face interactions. ID at 10; IAF, Tab 11 at 222.

¶34 The appellant argued below that the agency should have considered her for an Analyst position within the agency's Office of Budget and Programs Analysis. IAF, Tab 19 at 8. The administrative judge found that the appellant did not submit any evidence demonstrating that she would have been permitted to telework full-time in this position, consistent with her existing medical restrictions. ID at 11. She also found that the appellant failed to prove she was qualified for the position.[5] *Id.*

¶35 The parties have not disputed the administrative judge's determination that the appellant failed to prove that she was qualified for her position or the Analyst position she desired. ID at 9-12. We discern no basis to disturb these findings, and affirm the administrative judge's denial of the appellant's disability

---

[5] The appellant argued below that, at some unspecified date prior to her November 2019 removal, the agency "set [her] up for failure" by reassigning her to the Program and Management Analyst position from which she was removed. IAF, Tab 1 at 13, Tab 11 at 17, 24, 28-38, Tab 19 at 21, 24, Tab 25 at 10. The administrative judge determined that the appellant failed to provide any relevant facts, such as when the reassignment occurred, the agency's claimed reasons for the reassignment, and how the appellant's duties changed. ID at 13-14. Further, the administrative judge noted record evidence suggesting that the reassignment may have been part of a reorganization that impacted other FSA employees, not just the appellant, and in any event the appellant never worked in the Program and Management Analyst position prior to her removal. ID at 13-14; IAF, Tab 5 at 17-18. Thus, the administrative judge found that the appellant failed to prove that her medical condition or any request for accommodation was a motivating factor in her reassignment. ID at 13-14. The parties have not challenged this finding on review, and we discern no basis to disturb it.

discrimination affirmative defenses on this basis. *Haas*, 2022 MSPB 36, ¶¶ 28-30. To the extent the administrative judge improperly characterized the appellant as a "qualified" individual, we find that this error did not impact the disposition of the appeal. *Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (explaining that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).

*EEO Reprisal*

¶36 The appellant alleged that the agency retaliated against her based on her request for reasonable accommodation and her prior EEO activity alleging discrimination and harassment by agency officials. IAF, Tab 19 at 11, 19, 23; Tab 25 at 6-12. The administrative judge denied the appellant's EEO reprisal affirmative defense claim, concluding that even though she engaged in protected EEO activity when she complained of discrimination and sought reasonable accommodation, she failed to prove that her reasonable accommodation request or EEO activity was a motivating factor in the agency's decision to remove her. ID at 17-19.

¶37 To establish an affirmative defense of reprisal under 42 U.S.C. § 2000e-16, i.e., Title VII discrimination and retaliation claims involving race, color, religion, sex, or national origin, an appellant must prove by preponderant evidence that her membership in a protected class was a motivating factor in the contested personnel action, even if it was not the only reason. *Savage*, 122 M.S.P.R. 612, ¶¶ 41, 51. The Board will evaluate the evidence as a whole to determine if an appellant met her burden. *Gardner v. Department of Veterans Affairs*, 123 M.S.P.R. 647, ¶¶ 28-31 (2016), *clarified by Pridgen*, 2022 MSPB 31, ¶¶ 23-24. If she does so, the appellant establishes that the agency violated 42 U.S.C. § 2000e-16 and committed a prohibited personnel practice under 5 U.S.C. § 2302(b)(1). *Savage*, 122 M.S.P.R. 612, ¶ 51. If the agency is able to prove that it would have taken the same action in the absence of the

discriminatory or retaliatory motive, its violation will not require reversal of the adverse action. *Id.*

¶38 However, after the initial decision was issued in this case, the Board recognized that a more stringent standard applies in the context of reprisal claims arising under the Americans with Disabilities Act Amendments Act of 2008 and Rehabilitation Act, such that the appellant must prove that her prior EEO activity was the "but-for" cause of the retaliation. *Pridgen*, 2022 MSPB 31, ¶¶ 44-47. The administrative judge did not have the benefit of *Pridgen* and instead relied on *Savage* and its progeny in analyzing the appellant's disability-based EEO reprisal claim. ID at 17-19. We therefore recognize that the more stringent "but-for" standard should have applied to the appellant's EEO reprisal claim, rather than the motivating factor standard. Nevertheless, because we agree with the administrative judge's finding that the appellant failed to meet the lesser motivating factor standard, she necessarily failed to meet the more stringent "but-for" causation standard applicable to her disability-based EEO reprisal claim. *Haas*, 2022 MSPB 36, ¶¶ 31-32.

The appellant's removal is appropriate.

¶39 Because the administrative judge found that the agency failed to prove its charge, she did not make findings regarding a nexus between the appellant's inability to perform her duties and the efficiency of the service or whether the removal was reasonable. Therefore, we do so here.

¶40 Generally, removal for inability to perform the essential functions of a position promotes the efficiency of the service, as required by 5 U.S.C. § 7513(a). *Fox*, 120 M.S.P.R. 529, ¶ 40. Although a removal action may be rescinded on the basis that such action would not promote the efficiency of the service when the evidence clearly and unambiguously demonstrates that the appellant has recovered before the administrative judge issues an initial decision in their Board appeal, the appellant provided no such evidence here. *Owens v. Department of*

*Homeland Security*, 2023 MSPB 7, ¶ 15; *Wren v. Department of the Army*, 121 M.S.P.R. 28, ¶ 6 (2014).

¶41 The evidence before the agency at the time of the appellant's removal did not reflect a foreseeable end to her unavailability for duty. Instead, the March 27, 2019 letter from the appellant's psychiatrist—the last medical documentation the appellant provided to the agency before her removal—did not clear her for an unconditional return to duty, stating that she could only return to work in a full-time telework capacity, and that a return to "the same work environment and condition would likely impede [her] progress." IAF, Tab 11 at 76, 173-76. As previously noted, at that point the appellant had been unable to report to duty on a full-time regular basis since April 23, 2018, and all her medical status letters from the prior year indicated that her conditions persisted and that there was no end in sight to her inability to return to duty on a full-time regular basis. *Id.* at 61-74. Despite this, the agency continued to work with the appellant to find a suitable accommodation that would permit her to perform the essential functions of her position for an additional 6 months before determining that her condition could not be accommodated without removing the essential functions of her position. *See* IAF, Tab 11 at 17, 102, 114-223; Tab 22 at 128-50. Accordingly, we conclude that the appellant's removal promoted the efficiency of the service. *See Clemens*, 120 M.S.P.R. 616, ¶ 5; *Fox*, 120 M.S.P.R. 529, ¶ 24, 40.

¶42 In summary, we conclude that the administrative judge applied an incorrect standard to the agency's charge. Under the correct legal standard, the agency met its burden, the appellant failed to prove her affirmative defenses, and her removal is appropriate. Accordingly, we grant the agency's petition for review. We affirm the initial decision's findings that the appellant failed to prove her affirmative defenses and we modify the analysis, as set forth above. We

otherwise reverse the initial decision and sustain the appellant's removal for medical inability to perform her job duties.[6]

## NOTICE OF APPEAL RIGHTS[7]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court

[6] Because we conclude that the administrative judge incorrectly analyzed the agency action as a charge of excessive absences instead of a charge of medical inability to perform, we need not consider the agency's alternative argument that it met its burden of proving the excessive absences charge. *See* PFR File, Tab 1 at 14-17. Consequently, we also deny the agency's request to submit the October 12, 2018 FMLA letter as additional evidence on review. *Id.* at 16, 24-25.

[7] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[8] The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

---

[8] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD: /s/ for

Jennifer Everling
Acting Clerk of the Board

Washington, D.C.